# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  1:14-mj-00196-SAB-1 |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION TO DISMISS |
| v. | ECF NO. 22, 24 |
| DAVID JAMAR PICOU, | |
| Defendant. | |

On July 16, 2015, Defendant David Jamar Picou ("Defendant") filed a motion to dismiss. (ECF No. 22.)  An amended motion to dismiss was filed on July 17, 2015.  (ECF No. 24.)  Plaintiff United States of America ("the Government" or "the United States") filed an opposition on July 31, 2015.  (ECF No. 25.)  Defendant filed a reply on August 7, 2015.  (ECF No. 26.)

The hearing on Defendant's motion to dismiss took place on August 20, 2015.  Erin Snyder appeared on behalf of Defendant.  Bayleigh Pettigrew appeared on behalf of the Government.  For the reasons set forth below, Defendant's motion to dismiss is denied.

## I.

## BACKGROUND

The criminal complaint in this action was filed on November 6, 2014.  (ECF No. 1.)  The criminal complaint raises two counts against Defendant: 1) for operating a motor vehicle under the influence of alcohol, or a drug in violation of 36 C.F.R. § 4.23(a)(1), and 2) for driving a motor vehicle with a driver's license suspended for driving under the influence, in violation of 36 C.F.R. § 4.2 and California Vehicle Code § 14601.2(a).

The criminal complaint alleges that on August 25, 2014 at approximately 2:55 p.m., Defendant was observed driving a white Ford Expedition with no visible registration and which

appeared to traveling approximately 40 miles per hour in a 25 mile per hour zone.  Defendant was also observed passing over double yellow lines twice.

Ranger Jod Booker initiated a traffic stop.  Ranger Booker immediately observed that Defendant's eyes were blood shot and hazy.  When asked for his license, registration, and proof of insurance, Defendant informed Ranger Booker that the vehicle was recently purchased and registration was in process.  Defendant further told Ranger Booker that his license had been taken from him because he failed to pay a speeding ticket in Nevada.

Ranger Booker contacted dispatch with Defendant's information and then approached the vehicle to see if Defendant's adult passenger, N.P., had a valid driver's license.  Ranger Booker returned to his vehicle and learned that both Defendant's and N.P.'s licenses were suspended.  Ranger Booker approached the vehicle again to speak to N.P. and noticed the odor of alcoholic beverages.  Defendant told Ranger Booker that he had been drinking around 9:30 a.m. and 10:30 a.m.  Ranger Booker told Defendant to step out of the vehicle and sit next to the patrol vehicle to run tests.  Ranger Booker called for an additional unit for assistance, resulting in Ranger Tom Parrack's arrival.

A field sobriety test was administered, resulting in six of six clues of intoxication in the horizontal gaze nystagmus test, three of eight clues in the walk and turn test, and one of four clues in the one leg stand.  Defendant consented to a breath test, which indicated that he had a blood alcohol concentration of 0.06%.

While the breath test was administered, Ranger Parrack asked dispatch why Defendant's license was expired.  Sequoia Kings County dispatch informed Ranger Parrack that Defendant's license was suspended for a failure to appear on a DUI charge.

On August 27, 2014, the National Park Service ("NPS") received a copy of Defendant's Department of Motor Vehicles ("DMV") record.  The record indicated Defendant's license was suspended for a failure to appear, but there was no indication of any arrest, citation, or conviction for a prior DUI for an incident occurring on August 25, 2014.  On September 28, 2014, NPS ran a criminal history check that also yielded no indication of any prior DUI.  On September 29, 2014, the United States Attorney's Office ran a criminal history check that again yielded no

1   indication of a prior DUI.  Several additional DMV records and criminal history reports received

2   in the ensuing months also indicated that Defendant had never been arrested, cited, or convicted

3   of a prior DUI.[1]

4          On November 6, 2014, the criminal complaint was filed in this action.  On November 20,

5   2014, Defendant made his initial appearance in this case and requested initial discovery.  The

6   Court ordered the Government to produce initial discovery within fourteen (14) days.  Initial

7   discovery was provided on November 25, 2014.  Pertinent to this motion, the Government did

8   not provide a copy of the dispatch tapes recording the conversations between the rangers and the

9   dispatch operator during Defendant's August 25, 2014 traffic stop.

10         On June 3, 2015, an Information was filed wherein the second count was changed from a

11  violation of California Vehicle Code § 14601.2(a) (driving a motor vehicle with a driver's

12  license suspended for driving under the influence) to a violation of California Vehicle Code §

13  14601.1(a) (driving a motor vehicle with a driver's license suspended for other reasons).

14         On June 16, 2015, Defendant requested any discovery not yet provided, including any

15  audio or video of the August 25, 2014 traffic stop.  On July 8, 2015, the Government produced

16  an e-mail from Jeffrey Webb to counsel for the Government indicating that the requested

17  dispatch recordings no longer existed because they were overwritten ninety days after the traffic

18  stop.

19                                          **II.**

20                   **LEGAL STANDARDS FOR MOTIONS TO DISMISS**

21         Under Federal Rule of Criminal Procedure 12(b), "[a] party may raise by pretrial motion

22  any defense, objection, or request that the court can determine without a trial on the merits."  "A

23  defense is thus "capable of determination" if trial of the facts surrounding the commission of the

24  alleged offense would be of no assistance in determining the validity of the defense."  U.S. v.

25  Covington, 395 U.S. 57, 60 (1969).

26         In ruling on a motion to dismiss in the criminal context, the Court may consider extrinsic

27  _____
    [1] At the hearing, the Government argued that the absence of any evidence of a DUI charge in the criminal history
    checks they conducted does not foreclose the possibility that Defendant has a DUI conviction in a jurisdiction not
28  covered by the criminal history check.

1  evidence.  <u>Covington</u>, 395 U.S. at 60; <u>see also</u> Fed. R. Crim. P. 12(d) ("When factual issues are
2  involved in deciding a motion, the court must state its essential findings on the record.").  "'[A]
3  district court may make preliminary findings of fact necessary to decide the questions of law
4  presented by pre-trial motions so long as the court's findings on the motion do not invade the
5  province of the ultimate finder of fact.'"  <u>U.S. v. Shortt Accountancy Corp.</u>, 785 F.2d 1448, 1452
6  (9th Cir. 1986).  "Under this standard, the district court must decide the issue raised in the
7  pretrial motion before trial if it is 'entirely segregable' from the evidence to be presented at
8  trial."  <u>Id.</u>

9                                           **III.**

10                                      **DISCUSSION**

11        Defendant argues that dismissal is appropriate due to the Government's failure to
12  preserve potentially exculpatory evidence.  Specifically, Defendant argues that the Government
13  failed to preserve the dispatch tapes recording the conversations between the rangers and
14  dispatch during the traffic stop which resulted in Defendant's arrest.  The record indicates that
15  the dispatch tapes were overwritten ninety days or later after the traffic stop.

16        In <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988), the Supreme Court held that the
17  government violates the Due Process Clause when it fails to preserve potentially exculpatory
18  evidence and acts in bad faith.  Additionally, "[w]here the government fails to preserve evidence
19  that is only potentially exculpatory, the right to due process is violated only if it possesses 'an
20  exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature
21  that the defendant would be unable to obtain comparable evidence by other reasonably available
22  means.'"  <u>U.S. v. Hernandez</u>, 109 F.3d 1450, 1455 (9th Cir. 1997) (quoting <u>California v.</u>
23  <u>Trombetta</u>, 467 U.S. 479 (1984)).

24        Defendant argues that the dispatch tapes were potentially exculpatory.  Defendant argues
25  that the dispatch recording could have impeached the credibility of the rangers.  Specifically, the
26  rangers claim that they were informed by dispatch that Defendant's license was suspended for
27  failure to appear on a DUI charge.  However, Defendant has never been arrested, cited, or
28  convicted on a DUI.  Defendant contends that the dispatch tapes would have shown that the

1  rangers misstated what dispatch told them.  Defendant also contends that the contents of the

2  dispatch tapes could cast doubts on the rangers' testimony regarding the smell of alcohol from

3  Defendant's vehicle if the tapes show that Defendant did not smell alcohol until after they were

4  informed by dispatch that Defendant failed to appear on a DUI charge.

5          At the outset, the Court notes that even if the dispatch tapes showed that dispatch never

6  mentioned that Defendant's failure to appear was related to a DUI, this evidence would be of

7  limited probative value.  Assuming the rangers misstated the information provided by dispatch,

8  the mistake does not directly rebut the facts establishing Defendant's conduct.  At most, it

9  suggests that the rangers provided an unreliable narrative concerning the dispatch information

10 which could perhaps raise an inference regarding the reliability of the rangers' narrative

11 regarding the other aspects of the events which led to Defendant's arrest.

12         Even assuming that the dispatch tapes had some exculpatory value, Plaintiffs cannot

13 demonstrate that "[is] of such a nature that the defendant would be unable to obtain comparable

14 evidence by other reasonably available means."  U.S. v. Hernandez, 109 F.3d 1450, 1455 (9th

15 Cir. 1997) (quoting California v. Trombetta, 467 U.S. 479 (1984)).  Notably, the inconsistencies

16 regarding the information provided to the rangers by dispatch are apparent in the record without

17 the dispatch tape.  First, the fact that Plaintiff has no prior DUI charges, arrests, or convictions in

18 and of itself raises questions regarding the rangers' allegation that dispatch informed them about

19 a failure to appear on a DUI charge.  Second, Defendant can investigate the incident from

20 dispatch's perspective by questioning the dispatch operator to determine whether the mistake

21 came on dispatch's end or the rangers' end.  While the Court acknowledges that it is unlikely that

22 the dispatch officer specifically recalls the content of the conversation which occurred at the

23 traffic stop a year ago, Defendant can still ask the dispatch operator for the databases which are

24 used by the dispatch operator in his/her ordinary course of business to determine if any record of

25 the failure to appear on a DUI charge exists in that database.  If there is no evidence of a DUI in

26 that database, the evidence would strongly suggest that the mistake was made by the rangers and

27 not on dispatch's end.  Third, Defendant's motion to dismiss states that Ranger Booker's

28 Statement of Probable Cause states that dispatch informed him of a failure to appear on a DUI

1    charge whereas Ranger Booker's later reports suggest dispatch only told him that Defendant's

2    license was suspended for a failure to appear, meaning the inconsistency exists in the record even

3    without the dispatch tapes.  Fourth, Ranger Booker's own Statement of Probable Cause indicates

4    that he did not detect the smell of alcohol until after dispatch informed him of the failure to

5    appear on the DUI charge, thus the evidence supporting Defendant's theory that dispatch

6    influenced Ranger Booker's perception of Defendant's intoxicated state exists notwithstanding

7    the lost dispatch tapes.[2]

8         Finally, given the limited exculpatory value of the dispatch records and the existence of

9    other comparable evidence in the record regarding the dispatch issue, there appears to be little

10   evidence of bad faith on the Government's part regarding the dispatch tapes.  "The presence or

11   absence of bad faith turns on the government's knowledge of the apparent exculpatory value of

12   the evidence at the time it was lost or destroyed, because without knowledge of the potential

13   usefulness of the evidence, the evidence could not have been destroyed in bad faith."  U.S. v.

14   Zaragoza-Moreira, 780 F.3d 971, 977 (9th Cir. 2015) (citing Arizona v. Youngblood, 488 U.S.

15   51, 56 (1988)).  In this case, the inconsistencies regarding the rangers' reports are already readily

16   apparent in the record without the dispatch tapes.  The rangers' reports already provide

17   conflicting accounts regarding the dispatch conversations and it is unclear why the Government

18   would nefariously destroy the dispatch evidence when the inconsistent reports would remain in

19   the record.

20        Moreover, the tapes appeared to have been overwritten in accordance with the normal

21   practice of recording over tapes after approximately 90 days.  There is no substantial evidence

22   that the specific dispatch tapes in this case were nefariously targeted for deletion prematurely.

23   The tapes were evidently deleted on or after November 23, 2014.  Defendant had not specifically

24   requested production of the tapes prior to that date.

25        Although the Court finds that no Due Process violation occurred under Youngblood

---

[2] It is also worth noting that Defendant's theory that dispatch's statements clouded the rangers' perception of the events is rather unconvincing considering the fact that Defendant admitted to the rangers that he had been drinking earlier that day.  It is more likely that Defendant's admission that he had been drinking would have affected the rangers' perception than the statements made in the lost dispatch tapes.

because other comparable evidence exists by reasonably available means and there is little evidence of bad faith on the part of the Government, the Court admonishes the Government for failing to preserve the dispatch tapes.  The argument raised by Defendant at the hearing is well-taken by the Court: the Government's criminal complaint raised a charge against Defendant under California Vehicle Code § 14601.2(a) for operating a motor vehicle with a driver's license suspended for a DUI.  The only evidence supporting the claim that Defendant's license was suspended on a DUI was the rangers' statement that dispatch informed the rangers that Defendant's license was suspended on a DUI.  Thus, the dispatch tapes were clearly relevant. The importance of the dispatch tapes was heightened when the Government received the criminal history reports that had no reference to any DUI and it was unclear where the DUI information came from.  Thus, the Government should have preserved the tapes as soon as it became apparent that the DUI would be an issue and it was apparent as early as August or September 2014—prior to when the tapes were believed to have been lost.

Based upon the foregoing, the Court finds that Defendant has not established bad faith on the part of the Government and has not established that a Due Process violation occurred with respect to the dispatch tapes.

## IV.

## CONCLUSION AND ORDER

Based upon the foregoing, it is HEREBY ORDERED that Defendant's motion to dismiss is DENIED.

IT IS SO ORDERED.

Dated:   **August 21, 2015**

_____
UNITED STATES MAGISTRATE JUDGE